J-S07025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDDIE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1731 MDA 2018 |

Appeal from the PCRA Order Entered September 19, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001948-2014

BEFORE:   OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY OLSON, J.:                    **FILED: SEPTEMBER 20, 2019**

Appellant, Eddie Williams, appeals from the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541- 9546.  Appellant argues that the PCRA court erred in denying his PCRA petition which raised several claims of ineffective assistance of counsel.  We affirm.

Appellant was convicted of first-degree murder and other crimes related to an incident that occurred on March 10, 2014.  Specifically, Appellant was convicted following a seven-day jury trial for the robbery and shooting of two individuals, Marcus Ortiz (who was killed) and Keith Crawford (who, although seriously injured, survived).  Following conviction, Appellant was sentenced to life in prison.   This Court affirmed the judgment of sentence. ***Commonwealth v. Williams***, 2177 MDA 2015 (Pa. Super. 2016)

_____
*   Retired Senior Judge assigned to the Superior Court.

(unpublished memorandum). Appellant filed a timely *pro se* PCRA petition alleging numerous claims of ineffective assistance of trial counsel. The PCRA court assigned counsel, who filed an amended petition which also alleged various claims of ineffective assistance of counsel. Following a hearing at which Appellant and his trial counsel testified, the PCRA court denied Appellant's petition. This timely appealed followed.

On appeal, Appellant raises the following issues[1]:

1. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel asked Appellant, on the stand, whether he had ever been arrested for any other crimes?

2.. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel failed to file a [m]otion to [s]uppress the evidence that was obtained from an illegal search of Appellant's vehicle and the illegal use of Appellant's legal mail correspondence[]?

3. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel failed to call or interview Matthew Snevely as a witness at Appellant's trial?

4. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel was ineffective when he deliberately informed the jury that Appellant's [c]o-[d]efendant pled guilty, without filing a [m]otion in limine, thus allowing the jury to hear that he pled guilty to conspiracy?

5. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers

_____

[1] We have re-ordered the issues for ease of disposition.

that [t]rial [c]ounsel was ineffective for stipulating to the recanted report and testimony of Office Edward A. Kozicki?

6. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel failed to object to the Commonwealth's witness, Josephine Wolfe, and her identification of Appellant?

7. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel failed to object to inadmissible evidence, such as the [c]o-[d]efendant, Rick Cannon's, bloody clothes, shoes, and [gunshot residue] report?

8. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel failed to object to the use of the Commonwealth's audio recording of [c]o-[d]efendant [Akeita] Harden's non-redacted statement to the jury?

9. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel failed to properly cross examine Keith Crawford[,] Chief Leahy, and the D.N.A. [*sic*] expert?

10. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel failed to object to the Commonwealth's improper comments during closing arguments when the Commonwealth stated "every word out of your mouth is a lie," and "he lied to you"?

11. Whether Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel included false information in his ***Anders***[2] [b]rief to the Superior Court of Pennsylvania when he stated in his ***Anders*** [b]rief that Appellant was in the house during the shooting?

Appellant's Brief at 4-7 (suggested answers omitted).

_____

[2] ***Anders v. California***, 386 U.S. 738 (1967).

When reviewing the denial of a PCRA petition, we consider "whether the PCRA court's determination is supported by the record and free from legal error." **Commonwealth v. Mitchell**, 141 A.3d 1277, 1283-1284 (Pa. 2016) (internal quotation marks and citation omitted). We are bound by the court's credibility determinations if they are supported by the record. **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015). Our standard of review is *de novo* as to the PCRA court's legal conclusions. **Id.**

"With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." **Commonwealth v. Brown**, 196 A.3d 130, 150 (Pa. 2018). Moreover,

> A petitioner will be granted relief **only** when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that **no reliable adjudication of guilt or innocence could have taken place**.

**Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (emphasis added).

Pursuant to the United States Supreme Court's decision of **Strickland v. Washington,** 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance of counsel, the petitioner must plead and prove three elements: 1) the underlying claim has arguable merit; 2) counsel had no reasonable basis for his action; and, 3) the petitioner suffered prejudice as a result of counsel's action. **Brown**, 196 A.3d at 150. As our Supreme Court has made clear, a petitioner shoulders a sizeable burden in demonstrating that counsel's actions

lacked a reasonable basis or that counsel's tactics produced an actionable harm:

> With regard to the second prong (reasonable basis), we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had **any** reasonable basis. We will hold that counsel's strategy lacked a reasonable basis **only** if the petitioner proves that a foregone alternative offered a potential for success substantially greater than the course actually pursued. **Our review of counsel's performance must be highly differential**. To establish the third element (prejudice), the petitioner must show that there is **a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction**.

*Id.* at 150-151 (internal quotations, citations omitted; emphasis added). The defendant's failure to establish just one of the three **Strickland** factors "requires rejection of the ineffectiveness claim." **Commonwealth v. Dennis**, 950 A.2d 945, 954 (Pa. 2008).

In his first issue on appeal, Appellant asserts that "he was denied his constitutionally guaranteed right to effective representation when . . . [t]rial [c]ounsel asked Appellant, on the stand, whether he had ever been arrested for any other crimes." Appellant's Brief at 47. He argues that "this introduction of his previous arrest opened the door for the Commonwealth to introduce Appellant's entire rap sheet." *Id.* at 48. He baldly concludes, with no explanation or analysis, that "the outcome of the trial would have been different" but for trial counsel's questions about his arrests. *Id.* We disagree.

In analyzing this claim under the three-part **Strickland** test, we agree that the first prong of the test has been met; *i.e.,* the underlying claim has

arguable merit. Evidence of a defendant's prior arrests is generally inadmissible because it may lead the jury to infer past criminal conduct by the defendant. ***Commonwealth v. Williams***, 660 A.2d 1316, 1321 (Pa. 1995). However, such evidence may be admissible where the defendant opens the door. "If [the] defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area." ***Commonwealth v. Stakley***, 365 A.2d 1298, 1299-1300 (Pa. Super. 1976). By eliciting testimony from Appellant as to his prior arrests, the Commonwealth had the right to further elaborate on those arrests. ***Commonwealth v. Palmer***, 462 A.2d 755, 760 (Pa. Super. 1983) ("Once a defendant . . . has himself introduced evidence of his prior crimes, the prosecution has a limited right to introduce evidence of prior convictions in rebuttal."). Hence, there is arguable merit to Appellant's claim that trial counsel provided ineffective assistance by asking Appellant about his prior arrests. However, Appellant failed to prove the second and third prongs of the ***Strickland*** test. Accordingly, Appellant's claim of ineffective assistance of counsel fails.

In addressing the second prong – reasonable basis – the PCRA court concluded that trial counsel had a reasonable basis for asking Appellant about his criminal record on direct examination. In reaching this conclusion, the PCRA court credited trial counsel's testimony that "'[i]t was our plan from the beginning not to hide [Appellant's] background' and the strategy was to

acknowledge [Appellant's] criminal background to the jury so as to 'try to separate in their mind[s] their personal feelings as opposed to what they feel legally.'" PCRA Court Opinion, 9/19/18 at 32 (internal citations omitted). The PCRA court went on to find "[c]ounsel stated that the understood strategy was not to hide from [Appellant's] background, but to concede past crimes and an unsavory lifestyle, in the hopes that the jury would recognize the admission and understand that such an admission does not necessarily implicate [Appellant] in the crimes being tried." *Id.* We agree with the learned PCRA court. As cautioned by our Supreme Court, we must be "highly deferential" in reviewing counsel's performance and deny relief whenever counsel's decisions have **any** reasonable basis. Appellant's unsavory past and current illegal lifestyle were going to be a primary focus of the case. In fact, trial counsel was certain in his expectation that evidence of Appellant's prior involvement in criminal activity would be introduced through other witnesses who testified at trial. It was a reasonable defense strategy not to hide from Appellant's past but to confront it head-on. Thus, Appellant failed to meet his burden with respect to the second element of the **Strickland** test.

Turning to the third prong of the test – prejudice as a result of counsel's actions – Appellant failed to meet his burden of establishing prejudice in several ways.

First, although evidence was introduced at trial as to Appellant's prior arrest record, said evidence was scant and the references were fleeting. Thus,

these passing remarks were not so highly prejudicial to Appellant that, had this evidence not been introduced, the outcome of the trial would have been different.

During the seven days of trial, there was an abundance of evidence introduced by both the Commonwealth and the defense as to Appellant's criminal lifestyle as a large-scale drug dealer. Appellant admitted that he began selling drugs at the age of 16 and built up his business to the point where he dealt with large volumes of drugs and sums of money. He also admitted to carrying a gun at all times, having at least 14 different aliases, and using numerous birthdates and social security numbers. Clearly, the evidence was overwhelming that Appellant had been involved in major criminal activity for decades.

In contrast, the express references to his prior arrest record were extremely limited. On direct examination, the following testimony was elicited:

| [Counsel]: | Okay. Had you ever been arrested before this? |
|---|---|
| [Appellant]: | Yes, sir. |
| [Counsel]: | How many times? Just give me times. How many times have you been arrested in your life? |
| [Appellant]: | Four. |
| [Counsel]: | Four times. Have you ever been arrested for drug offenses? |
| [Appellant]: | No, sir. |

| [Counsel]: | What kind of offenses have you been arrested for? |
| --- | --- |
| [Appellant]: | Receiving stolen property when I was young. |
| [Counsel]: | And what else? |
| [Appellant]: | Weapons charge. |
| [Counsel]: | So there were weapons involved also in this activity? |
| [Appellant]: | Yes, sir. |

N.T., 10/12/15, at 894. On cross-examination, the references to Appellant's prior arrest record were limited to the following:

| [DA]: | You were asked by your [c]ounsel about your prior arrests and you first said you had four of them, but then you only talked about two. You talked about receiving stolen property and you talked about the gun charges. What were the other two that you failed to reference? |
| --- | --- |
| [Appellant]: | Attempted robbery. |
| [DA]: | Attempted robbery, both of them? |
| [Appellant]: | I'm not sure. Honestly, it was so long ago I don't know. |

*Id.* at 963-964. The multiple volumes of testimony from this lengthy trial are replete with references to Appellant's criminal conduct. The Commonwealth's two questions about Appellant's past charges for attempted robbery were not so prejudicial that, had they not been asked, there was a reasonable probability of acquittal.

Leaving aside the passing references to Appellant's prior arrests, the trial transcript offers compelling and wholly unrelated evidence to support Appellant's guilty verdicts. The evidence establishes that Appellant and the victim, Keith Crawford, were partners in the drug-dealing business. They worked together for years but recently had a falling-out over drugs and money. On the morning of March 10, 2014, Appellant, his former girlfriend and co-defendant, Akeita Harden, and his cousin, Rick Cannon, traveled to Mr. Crawford's home in a red Cadillac SUV which was owned by Ms. Harden's friend. At some point that morning, Appellant, Ms. Harden and Mr. Cannon were inside Mr. Crawford's home with Mr. Crawford and the other victim, Marcus Ortiz. Mr. Crawford was "cooking" cocaine into crack cocaine. Ms. Harden returned to the SUV at which time she heard gunshots and saw Appellant and Mr. Cannon run from Mr. Crawford's apartment and return to the SUV. Appellant was carrying a paper bag and jumped into the front passenger seat. Mr. Cannon got in the back seat. Appellant was screaming at Ms. Harden, who was in the driver seat, to "get me the f**k out of here". N.T., 10/9/15, at 864. Ms. Harden led the police through Lebanon, Pennsylvania on a high-speed chase while Appellant yelled directions to her, even as she ran into a yard, hit signs and ran over a fire hydrant. Appellant eventually ordered Ms. Harden to stop the SUV at an alley near 7th and Guilford Streets, which was only a short distance from Appellant's stash house. Appellant jumped out of the front passenger seat of the SUV and ran down

the alley. Ms. Harden was stopped by police near the SUV.[3] Mr. Cannon jumped from the rear passenger seat and ran in the opposite direction from Appellant where he was eventually apprehended. Appellant was successful in eluding police that day.

In the alley where Appellant escaped, the police recovered a ring that belonged to Mr. Crawford and a bag of cocaine. Also found in the alley was a 9-millimeter Makarov which was determined to be the weapon used in the shootings of both Mr. Crawford and Mr. Ortiz. The Makarov had Appellant's DNA on the grip. When the SUV was searched, a watch belonging to Mr. Crawford (that contained drops of Mr. Crawford's blood) was located in the doorjamb between the front passenger seat and the door, and a key ring containing Mr. Crawford's house and car keys was found on the floor of the front passenger seat.

---

[3] Ms. Harden, Appellant's co-defendant, was questioned by police after she was apprehended. She told police at that time that Appellant talked about robbing Mr. Crawford about one week prior to the incident. At trial, Ms. Harden recanted this statement. Instead, she testified that Appellant discussed robbing a person known as "Ritchie Boy" approximately one year earlier. Ms. Harden's testimony lends further support for the soundness of trial counsel's strategy, which assumed inevitable disclosure of Appellant's longstanding involvement in criminal activity, and contemplated a plausible plan to address adverse facts before the jury. Moreover, testimony about Appellant's threat to commit a robbery bolsters the conclusion that the mere reference to Appellant's prior arrests for attempted robbery during Appellant's cross-examination was not overly prejudicial to Appellant.

Appellant was arrested several months later in Philadelphia. Appellant admitted during trial that he gave false names and identification and lied repeatedly when first questioned by the police.

A former cellmate of Appellant's testified that he was being transferred to a different cell block in the jail where Mr. Cannon was located. Prior to his transfer, Appellant told the cellmate to tell Mr. Cannon that he should take the rap since Mr. Cannon had Acquired Immune Deficiency Syndrome (AIDs) and was going to die in jail anyway. Appellant also told his cellmate to tell Mr. Cannon that, if he took the blame, Appellant would take care of Mr. Cannon by providing him with drugs and commissary money. When Appellant learned that his cellmate was going to testify at Appellant's trial, Appellant threatened to kill him.

Most importantly, Mr. Crawford, the surviving victim of the shooting, identified Appellant during a photo lineup and testified during trial that Appellant stole his watch and ring and was the man that shot him.

With this vast amount of evidence, we cannot conclude that, had Appellant not been asked about his prior arrest record, there would be a reasonable probability that the verdicts would have been different. Accordingly, Appellant failed to establish that he suffered prejudice as a result of trial counsel's actions.

As previously noted, our Supreme Court has directed that a "petitioner will be granted relief **only** when he proves, by a preponderance of the

evidence, that his conviction . . . resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that **no reliable adjudication of guilt or innocence could have taken place**." *Spotz*, 83 A.3d at 311 (emphasis added). Appellant failed to prove by a preponderance of the evidence that trial counsel's elicitation of Appellant's prior arrest record so undermined the truth-determining process that no reliable finding of guilt could have taken place. Appellant's first claim on appeal fails.

In his second issue, Appellant asserts that "he was denied his right to effective representation when his [t]rial [c]ounsel failed to file a [m]otion to [s]uppress the evidence that was obtained from an illegal search of Appellant's vehicle and the illegal use of Appellant's legal mail correspondences [*sic*] in and out of the prison." Appellant's Brief at 11. First, Appellant argues that the keys to Mr. Crawford's Nissan, which were found on the floor of the front passenger side of the Cadillac SUV, were obtained through an illegal search. Without analysis or citation to the record or legal precedent, Appellant makes the bald statement that trial counsel "should have filed a [s]uppression [m]otion regarding any and all evidence seized as a result of said illegal search." *Id.* at 13.

Appellant's argument regarding this issue is scant and contains mere conclusions. It is, therefore, difficult to ascertain from Appellant's brief whether he is merely arguing that the search of the Cadillac SUV was illegal

and, therefore, the keys to the Nissan found during that search should have been suppressed, or whether he is arguing that the subsequent search of Mr. Crawford's Nissan was illegal. In its opinion, the PCRA court notes the following:

> During testimony at the PCRA [h]earing, [Appellant] alleged that keys that were used to open a Nissan, in which the police found illegal drugs, were obtained from an illegal search of a Cadillac SUV. The Cadillac SUV had been impounded by the police after it was found abandoned following an extensive high-speed chase. [Appellant] was identified as an occupant of the Cadillac SUV who exited from the vehicle during the chase. At trial, testimony from Corporal Wade Achey indicated that the Nissan was actually opened by a locksmith that was called to the scene, but that the keys found in the Cadillac SUV were determined to be the keys to the Nissan.

PCRA Court Opinion, 9/19/18, at 7. In denying relief, the PCRA court focused on the legality of the search of the Cadillac SUV and found that Appellant failed to establish that the underlying claim had arguable merit; therefore, the first prong of the **Strickland** test was not met. Specifically, the PCRA court found that, although Appellant referred to the Cadillac SUV as his vehicle during the PCRA hearing, "[Appellant] admitted that the Cadillac was not owned by him or any of the co-defendants, and none had any possessory interest in the Cadillac." **Id.** The PCRA court went on to conclude "[Appellant] fails to plead or prove his standing to otherwise challenge the search or demonstrate a privacy interest in the Cadillac SUV. … [Appellant] admitted that he had no personal, possessory interest in the Cadillac. Therefore, his claim [lacks]

arguable merit." *Id.* at 7-8. We agree that Appellant failed to establish the first prong of the *Strickland* test, but for a different reason.[4]

Contrary to the PCRA court's finding that Appellant lacked standing to seek the suppression of evidence as he was not the owner of the Cadillac SUV, Appellant did have standing to pursue a suppression motion under Pa.R.Crim.P. 581 as his own constitutional rights may have been infringed. The doctrine of "automatic standing" permits a passenger in a vehicle to challenge the admissibility of evidence alleged to be the fruit of an illegal search and seizure even if the passenger has no ownership interest in the vehicle. *Commonwealth v. Enimpah*, 106 A.3d 695, 697 (Pa. 2014). Although federal courts have abandoned the automatic standing doctrine under the United States Constitution, our Supreme Court has held that automatic standing is recognized under Article I, § 8 of the Pennsylvania Constitution. *Commonwealth v. Sell*, 470 A.2d 457 (Pa. 1983). As our Supreme Court recently clarified:

> The automatic standing doctrine survives in our Commonwealth today. However, its operation does not qualify a defendant automatically to relief. Standing denotes the existence of a legal interest and entitles a defendant to file a suppression motion and to have that motion adjudicated by a court; nothing more. It allows the defendant to get his or her foot in the courtroom door; more is required before suppression becomes an available remedy.

---

[4] "[A]n appellate court may uphold an order of a lower court for any valid reason appearing from the record." *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1200 (Pa. 2009).

- 15 -

***Commonwealth v. Shabezz***, 166 A.3d 278, 286 (Pa. 2017) (internal quotation marks and citations omitted). The Court went on to explain:

> Generally, to have standing to pursue a suppression motion under Pa.R.Crim.P. 581, the defendant's own constitutional rights must have been infringed. However, it is well settled that a defendant charged with a possessory offense in this Commonwealth has automatic standing because the charge itself alleges an interest sufficient to support a claim under Article I, § 8 [of the Pennsylvania Constitution]. This rule entitles a defendant to review the merits of his suppression motion without a preliminary showing of ownership or possession in the premises or items seized. In addition to standing, though, a defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable. . . . In essence, while a defendant's standing dictates that a claim under Article I, § 8 may be brought, his privacy interest controls whether the claim will succeed—once a defendant has shown standing, he must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises.

***Id.*** at 286-287, *quoting* ***Enimpah***, 106 A.3d at 698-699 (cleaned up). As a result of the events that occurred on March 10, 2014, the Commonwealth charged Appellant with, among other things, the robbery of Mr. Crawford. Among the items taken from Mr. Crawford were his key ring (containing his house and car keys), a watch and a ring. Mr. Crawford's keys and watch were recovered from the Cadillac SUV. Since the Commonwealth charged Appellant with an offense stemming from his possession of items recovered from the Cadillac SUV, Appellant had standing to pursue suppression of such evidence. However, as our Supreme Court has made clear, the inquiry does not end there. In addition, Appellant was required to show that he had a reasonable and legitimate expectation of privacy in the Cadillac SUV. Appellant failed to

make any argument as to his reasonable and legitimate expectation of privacy in the SUV.[5]  Thus, Appellant failed to establish that his claim has arguable merit.   As Appellant failed to meet the first prong of the ***Strickland*** test, we need not consider the remaining two prongs.  Accordingly, Appellant's claim that counsel was ineffective for failing to seek the suppression of the evidence obtained as a result of the search of the Cadillac SUV fails.

Appellant also argues that trial counsel should have filed a suppression motion "regarding the illegal use of Appellant's legal mail correspondences [*sic*] that were sent directly to the detectives who were investigating the case." Appellant's Brief at 13.  In addressing this issue, the PCRA court stated:

> [Appellant] alleges that that both his and Ms. Hard[en]'s mail were being intercepted and sent to detectives working on the case. [Appellant] specifically avers that [t]rial [c]ounsel should have filed a motion to suppress a letter that was read in court during his trial.  Finally, [Appellant] contends that his legal mail was intercepted and sent to investigators.
>
> During cross-examination, at the PCRA [h]earing, [Appellant] admitted that none of his actual correspondence, much less his legal mail, was entered into evidence during his trial.  Instead, the only correspondence that was entered was from Ms. Hard[en] to a member of her family.  Th[e PCRA c]ourt then questioned PCRA [c]ounsel regarding [Appellant's] standing to bring this claim and, after hearing arguments from the parties, sustained the objection of the Commonwealth and struck the issue as not properly before th[e c]ourt on PCRA.

---

[5] Even if Appellant had attempted to make a showing that he had a reasonable and legitimate expectation of privacy in the Cadillac SUV, it is well-established that a person has no privacy expectation in property that he voluntarily abandoned or relinquished. ***Commonwealth v. Byrd***, 987 A.2d 786 (Pa. Super. 2009).

- 17 -

PCRA Court Opinion, 9/19/18, at 8 (internal citations omitted). On appeal, Appellant makes no attempt to show that his mail was, in fact, intercepted or more importantly, that his mail was introduced at any time during his trial. Instead, as with all of the arguments regarding ineffective assistance of counsel, Appellant makes bald factual allegations (with no citation to the record of his jury trial) and concludes, with no analysis or legal citation, that he met his burden of establishing ineffective assistance of counsel. Appellant's Brief at 13-15. We do not agree. Appellant failed to establish that his claim has arguable merit, that trial counsel had no reasonable basis for his action or that he was prejudiced in any way by trial counsel's action.[6] Accordingly, this claim also fails.

Appellant raises nine other claims of ineffective assistance of counsel in in this appeal. After reviewing the petition, the parties' briefs and the thorough and cogent opinion of the learned PCRA court, we conclude that the PCRA court's opinion adequately and accurately dispose of issues three through 11. Therefore, we adopt the PCRA court's September 19, 2018 opinion as our own with regard to the other nine issues. As such, we instruct the parties to attach the PCRA court's September 19, 2018 opinion to all future filings pertaining to our disposition of this appeal.

---

[6] Appellant does not identify the correspondence allegedly intercepted and introduced at the time of his trial. Thus, it is impossible for this Court to determine whether the correspondence was, in fact, improperly seized or prejudicial to Appellant.

Order affirmed.

Judge Pellegrini joins.

Judge McLaughlin files a Dissenting Memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2019

# IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :

                                  :    CP-38-CR-1948-2012

               V.                 :

                                  :

       EDDIE WILLIAMS           :

APPEARANCES:

Pier Hess, Esq.                  *for the Commonwealth*

Melissa Montgomery, Esq.    *for Defendant*

## OPINION, KLINE, J., SEPTEMBER 18, 2018

Before the court is Defendant's Petition for Post-Conviction Relief. For the reasons set forth herein, Defendant's Motion is hereby denied, as specified below.

## FACTS AND PROCEDURAL HISTORY

Defendant was charged with one count of Criminal Homicide[1], one count of Criminal Attempt to commit Criminal Homicide[2], two counts of Conspiracy to commit Criminal Homicide[3], four counts of Aggravated Assault[4], four counts of Conspiracy to commit Aggravated Assault[5], one count of Robbery[6], one count of Criminal Conspiracy to commit Robbery[7], one count of Violation of the Controlled Substance, Drug, Device and Cosmetic Act[8], one count of Criminal Conspiracy to commit a Violation of the Controlled Substance[9], Drug, Device

---

[1] 18 Pa.C.S.A. § 2501(a)

[2] 18 Pa.C.S.A. § 903(a)(1)

[3] 18 Pa.C.S.A. § 903(a)(1)

[4] 18 Pa.C.S.A. § 2702(a)(1); 18 Pa.C.S.A. § 2702(a)(4)

[5] 18 Pa.C.S.A. § 903(a)(1)

[6] 18 Pa.C.S.A. § 3701(a)(1)(i)

[7] 18 Pa.C.S.A. § 903(a)(1)

[8] 35 Pa.C.S.A. § 780-113(a)(30)

[9] 18 Pa.C.S.A. § 903(a)(1)

1

and Cosmetic Act and one count of Person Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms[10], one count of Firearms Not to be Carried Without a License[11], one count of Flight to Avoid Apprehension, Trial or Punishment[12] and one count of Criminal Conspiracy to commit Flight to Avoid Apprehension, Trial or Punishment[13]. Following a seven day jury trial held in October, 2015, Defendant was found guilty on all counts. On December 2, 2015, Defendant was sentenced to life imprisonment.

Thereafter, on December 3, 2015, Defendant filed an appeal with the Superior Court alleging errors of this Court. On August 24, 2016, the Superior Court affirmed Defendant's judgment of sentence.

On July 14, 2017, Defendant filed a *pro se* Petition for Post-Conviction Relief alleging various claims of ineffective assistance of counsel through the actions of Trial Counsel. We assigned counsel to assist Defendant and subsequent Amended Petitions were filed. Defendant's Second Amended Petition alleges that Defendant was denied his right to the effective assistance of counsel in the following ways:

1. Trial Counsel's failure to file a Motion to Suppress evidence that was obtained through an illegal search of Defendant's vehicle and the illegal use of Defendant's legal mail correspondences.

2. Trial counsel failed to call or interview Matthew Snevely as a witness at Defendant's trial.

3. Trial Counsel deliberately informed the jury that Defendant's Co-Defendant pled guilty, without filing a Motion in Limine, thus allowing the jury to hear that he pled guilty.

---

[10] 18 Pa.C.S.A. § 6105(a)(1)
[11] 18 Pa.C.S.A. § 6105(a)(1)
[12] 18 Pa.C.S.A. § 5126(a)
[13] 18 Pa.C.S.A. § 903(a)(1)

2

4. Trial Counsel stipulated to the recanted report and testimony of Officer Edward A. Kosicki.

5. Trial Counsel failed to object to the Commonwealth's witness, Josephine Wolfe, and her identification of Defendant.

6. Trial Counsel failed to object to inadmissible evidence, such as Co-Defendant Rick Cannon's bloody clothes, shoes, GSR report.

7. Trial Counsel failed to object to the use of Commonwealth's audio recording of Co-Defendant Harden's non-redacted statement to the jury.

8. Trial Counsel failed to properly cross-examine Keith Crawford, Chief Leahy, and the DNA Expert.

9. Trial Counsel failed to object to the Commonwealth's improper comments during closing arguments when the Commonwealth stated that "every word out of your mouth is a lie" and "he lied to you."

10. Trial Counsel included false information in his Anders Brief to the Superior Court of Pennsylvania when he stated that Defendant was in the house during the shooting.

11. Trial Counsel asked Defendant on the stand whether he had ever been arrested for any other crimes.

12. Trial Counsel failed to object to the contradictory testimony of the Commonwealth's witnesses, Keith Crawford and the DNA Expert.

We then scheduled a hearing on Defendant's PCRA Petition for January 19, 2018. Upon motion of the Commonwealth, the hearing was continued to March 26, 2018.

At the PCRA Hearing, Defendant testified on his own behalf while the Commonwealth called Defendant's trial counsel, Harry Fenton, Esq. ("Trial Counsel"). Upon conclusion of the PCRA Hearing, the Court directed that the parties file briefs in support of their respective positions within forty-five (45) days of the filing of the transcripts. Defendant filed his brief on May 22, 2018.

3

The Commonwealth failed to file a brief. The matter is thus before this Court and ripe for disposition.

## DISCUSSION

The PCRA sets forth the requirements for a petitioner's eligibility for relief as follows:

§ 9543. Eligibility for relief

(a) General rule.--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

4

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

42 Pa.C.S.A. § 9543(a).

Ineffective assistance of counsel is one of the grounds enumerated in 42 Pa.C.S.A. § 9543(a)(2). Article I, Section 9 of the Pennsylvania Constitution, guarantees an accused the right to counsel in criminal prosecutions. This section provides the following.

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage...

5

PA Const. Art. 1, §9. The right to counsel includes the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984), citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).

The Pennsylvania Supreme Court has stated the following regarding a claim of ineffective assistance of counsel in a PCRA petition:

> A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Com. v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014) (citations omitted). "Arguable merit exists when the factual statements are accurate and could establish

6

cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Com. v. Barnett*, 121 A.3d 534, 540 (Pa.Super. 2015)(internal quotations and citations omitted). We therefore evaluate each claim accordingly.

*Failure to File a Motion to Suppress Evidence Obtained in an Illegal search of Defendant's Vehicle and the Illegal Use of Defendant's Legal Mail Correspondences*

Defendant first argues that he was denied his constitutionally guaranteed right to effective representation because his Trial Counsel failed to file a motion to suppress evidence obtained from an illegal search of his vehicle. During testimony at the PCRA Hearing, Defendant alleged that keys that were used to open a Nissan, in which the police found illegal drugs, were obtained from an illegal search of a Cadillac SUV. The Cadillac SUV had been impounded by the police after it was found abandoned following an extensive, high-speed chase. Defendant was identified as an occupant of the Cadillac SUV who exited from the vehicle during the chase. At trial, testimony from Corporal Wade Achey indicated that the Nissan was actually opened by a locksmith that was called to the scene, but that the keys found in the Cadillac SUV were determined to be the keys to the Nissan.

Throughout his direct examination at the PCRA Hearing, Defendant refered to the Cadillac SUV as his vehicle. However, during cross-examination, Defendant admitted that the Cadillac was not owned by him or any of the co-defendants, and none had any possessory interest in the Cadillac. (Notes of Testimony of March 26, 2018 PCRA Hearing "PCRA Hearing N.T." at 54-55). Defendant was not in the vehicle when it was taken into custody by police. Furthermore, Defendant fails to plead or prove his standing to

7

otherwise challenge the search or demonstrate a privacy interest in the Cadillac SUV.

We find that Defendant has failed to satisfy the first prong of showing that the underlying claim has arguable merit. Our Supreme Court has stated that "a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests." *Com. v. Millner*, 888 A.2d 680, 692 (Pa. 2005). Defendant admitted that he had no personal, possessory interest in the Cadillac. Therefore, his claim fails to have arguable merit.

The next issue raised by Defendant with respect to Trial Counsel's failure to file a motion to suppress involves the monitoring of his correspondence while in jail and the entry of correspondence from Co-Defendant, Akeita Harding, into evidence at trial. Defendant alleges that both his and Ms. Harding's mail were being intercepted and sent to detectives working on the case. Defendant specifically avers that Trial Counsel should have filed a motion to suppress a letter that was read in court during his trial. Finally, Defendant contends that his legal mail was intercepted and sent to investigators.

During cross-examination at the PCRA Hearing, Defendant admitted that none of his actual correspondence, much less his legal mail, was entered into evidence during his trial. Instead, the only correspondence that was entered was from Ms. Harding to a member of her family. (PCRA N.T. 55). This Court then questioned PCRA Counsel regarding Defendant's standing to bring this claim and, after hearing arguments from the parties, sustained the objection of the Commonwealth and struck the issue as not properly before this Court on PCRA. (PCRA Hearing N.T. 128-130).

8

## Failure to Call or Interview Matthew Snevely

Defendant next avers that Trial Counsel was ineffective for failing to interview or call Matthew Snevely, a witness identified in police reports as having seen Defendant outside the crime scene on the morning of the homicide. Defendant also argues that Trial Counsel was ineffective for failing to properly cross-examine the Commonwealth's witness as to Mr. Snevely and reports indicating that police had contact with him. Defendant alleges that Mr. Snevely would have corroborated his alibi that he was outside of the apartment at the time of the homicide and did not participate in the crime. Furthermore, Defendant contends that the lead investigator called at trial, testified that the police found no witnesses.

The police report provided indicated that Mr. Snevely was interviewed by police and stated that he saw an individual, later identified as Defendant, standing at the Cadillac SUV and then walking back into the building where the homicide took place. During Defendant's trial, Trial Counsel specifically questioned the chief investigator, Chief Leahy, regarding Mr. Snevely, even indicating that Mr. Snevely's name was on a list of witnesses, to which Chief John Leahy replied "I personally do not recall that individual" and that he "obviously did not interview him." (Notes of Testimony of Trial "Trial N.T." at 713-714).

In a letter produced at the PCRA Hearing, Trial Counsel indicated to Defendant that he made a "conscious decision not to call this person because he never actually identified you at the time and I was leery of his testimony." (PCRA Hearing N.T. 16, Ex. 3). At the PCRA Hearing, Trial Counsel testified that Mr. Snevely's identification of Defendant was problematic because of an inability to pinpoint the exact time of the encounter and that he did not call

9

Mr. Snevely as a witness because he was "worried what he might say." (PCRA Hearing 92). However, Trial Counsel admitted that he did not interview Mr. Snevely and if he had, he would have known the substance of Mr. Snevely's testimony.

> To establish that counsel was ineffective for failing to call a witness, [a defendant] must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *See Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 275 (2000). Failure to call a witness is not *per se* ineffective assistance of counsel, for such a decision implicates matters of trial strategy. *Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305, 1319 (1996). It is [a defendant's] burden to demonstrate that trial counsel had no reasonable basis for declining to call [ ] a witness.

*Com. v. Washington*, 927 A.2d 586, 599 (Pa. 2007).

Defendant has demonstrated that Mr. Snevely existed as a possible witness and that Trial Counsel knew of Mr. Snevely. However, we note that Defendant failed to demonstrate that Mr. Snevely was available and willing to testify as a witness for the defense at trial. Defendant failed to call Mr. Snevely to testify at the PCRA Hearing regarding what his testimony might have been at trial. Defendant's speculation that Mr. Snevely's testimony would have corroborated his alibi does not establish that the witness' absence at trial was so prejudicial as to deny his right to a fair trial. Consequently, we find no merit in Defendant's claim of ineffective assistance for failure to call Mr. Snevely as a witness at trial.

As for Trial Counsel's cross-examination of Chief Leahy, we again find that Defendant has failed to establish that an alternative strategy presented

10

the opportunity for a substantially greater potential for success. Trial Counsel clearly brought forth the issue of Mr. Snevely to the jury during his cross-examination of Chief Leahy and even mentioned the fact that Mr. Snevely's name was on the list of witnesses. Nevertheless, as Trial Counsel expressed during the PCRA Hearing, the concern as to establishing the timeline in support of Defendant's alibi could undermine his defense altogether. Defendant fails to bridge the gap between attacking the credibility of Chief Leahy as to the witness and such inaction so affecting the outcome of his trial as to undermine the result thereof.

## Informing the Jury that Co-Defendant Pled Guilty Without Filing a Motion in Limine

Defendant continues that Trial Counsel was ineffective for failing to file a motion in limine on Defendant's behalf before informing the jury that Co-Defendant, Rick Cannon, had pled guilty. Defendant argues that Trial Counsel's comment to the jury during opening statements regarding Mr. Cannon's plea of guilty prompted the District Attorney to request a sidebar, upon which, the Court then read aloud to the jury Mr. Cannon's entire information, including charges of conspiracy that could implicate Defendant as a co-conspirator. It is noted that during Defendant's trial, Mr. Cannon was unwilling to testify for either party and his case was on appeal, so the Court lacked sufficient jurisdiction to compel his testimony.

Defendant alleges that having Mr. Cannon's information read to the jury, including the conspiracy charges to which Mr. Cannon pled guilty, essentially amounts to testimony without challenge or ability to cross-examine. Defendant contends that the reading of Mr. Cannon's information clearly impacted the jury since, during deliberations, the jury specifically requested a

11

copy of the information, although the Court denied that request and instead read the information to the jury again.

At the PCRA Hearing, Trial Counsel testified that he employed the strategy of disclosing Mr. Cannon's guilty plea to the jury "[b]ecause I wanted the jury to know that Rick Cannon had--had pled guilty. My whole--theory was we can tell the jury we know somebody killed these people . . . . We know who it is because he already told you that." (PCRA Hearing N.T. 89). Trial Counsel stated that he believed, at the time, that reading the information by the court was the appropriate thing, but that "[i]n retrospect, I should have tried to redact the information so to speak so as to have the homicide charge read and not the conspiracy charge . . . because the conspiracy charge obviously implicates people other than Mr. Cannon." (PCRA Hearing N.T. 90-91).

Defendant admitted that the strategy in his trial was that he was at the scene of the crime, but was not involved in the commission of the actual homicide. (PCRA Hearing N.T. 62). Moreover, in furtherance of that aim, Trial Counsel sought to be direct by admitting that Defendant had a criminal background and that the jury may not like Defendant, but that Defendant did not commit the homicide. *Id.* Defendant further admitted that based on the trial strategy and the physical evidence, that Trial Counsel's tactic of referring to Mr. Cannon's guilty plea to the murder was a logical choice.

The crux of Defendant's contention seems to be that following the employment of the above-stated tactic, the Court read Mr. Cannon's information to the jury following opening statements and upon later request during deliberations. Defendant somehow conflates this argument, though

12

admittedly at Trial Counsel's own behest, into a violation of his Confrontation Clause rights[14].

We reject Defendant's argument for several obvious reasons. First, the information to which Mr. Cannon pled guilty never specifically or inferentially identifies Defendant in the role of principal or accessory. Next, at trial, the remaining living victim of the crime specifically identified Defendant as the person who shot him. (Trial N.T. 543). Finally, the charges listed in Mr. Cannon's information were the same charges on which Defendant was being tried and the information was not entered into evidence. Therefore, we find that the reading of the information to which Mr. Cannon pled guilty, which in itself was corroborative of Trial Counsel's reference to Mr. Cannon's admission of guilt, did not violate Defendant's Confrontation Clause rights.

With regard to an analysis of Defendant's claim for ineffective assistance of counsel, we find that the argument fails. While a motion in limine seeking to restrict the language of the information disclosed to the jury may well have been submitted and entertained by the Court, it is by no means a certainty that such a motion would have succeeded. Moreover, trial strategy does not have to be successful in order to be effective. Trial Counsel clearly had a reasonable basis for referencing Mr. Cannon's guilty plea to the homicide as this serves to bolster Defendant's alibi. Additionally, in light of the cumulative evidence presented at trial, including the living victim's identification of

---

[14] "The Confrontation Clause of the Sixth Amendment, extended against the States by the Fourteenth Amendment, guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.' The right of confrontation includes the right to cross-examine witnesses. Therefore, where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)(citations omitted).

Defendant, we find that Defendant has failed to show that an alternative offered a substantially greater prospect for success.

*Stipulation to the "Recanted" Report and Testimony of Officer Edward Kozicki*

Defendant next argues that Trial Counsel was ineffective for stipulating to the supplemental report provided by Officer Edward Kozicki. Officer Kozicki, an officer who responded to the police chase, claimed in his report that he had found a gun, later shown to be the murder weapon, a magazine to the gun and some cocaine in the area around where Defendant was observed to have exited the Cadillac SUV during the police chase. Officer Kozicki's initial report indicated that he found the items on North 9th Street in Lebanon; however, in his supplemental report, Officer Kozicki stated that upon meeting with the district attorney's office, he realized that his initial report was in error and that he actually found the items at North 7th Street in Lebanon.

Defendant testified at the PCRA Hearing that he requested Trial Counsel to file a motion to suppress the introduction of the gun, to which Trial Counsel responded that he did not file such a motion because the issue was one of credibility for the jury to determine. Defendant then testified that he was under the impression that Trial Counsel would get the opportunity to attack the credibility of Officer Kozicki and the supplemental report during trial. Several months later, Defendant received a letter Trial Counsel had sent to the district attorney's office stipulating to the supplemental report. At trial, upon agreement of counsel and the district attorney's office, the following stipulation was read into the record:

> It is agreed that should Officer Kozicki testify he would indicate the following: He searched the portion of the alleyway wherein the bag of crack cocaine and Makarov pistol were found. Officer Kozicki located that bag of crack cocaine on the patch of grass in

14

said alleyway near a set of concrete steps to the right side of Exhibit 21. Officer Kozicki placed this bag onto the adjacent curb. Law enforcement subsequently photographed this bag of crack cocaine and secured it into evidence for subsequent forensic testing.

(Trial N.T. 74). Defendant argues that the lack of opportunity to cross-examine Officer Kozicki as to why his report was changed was a big issue.

Trial Counsel testified at the PCRA Hearing that his general strategy is to limit the amount of testimony from an officer who has found incriminating evidence. Trial Counsel stated that he "didn't see any benefit in having [Officer Kozicki] sitting here telling the jury what he found and where he found it when we could just have that laid out as a fact, go onto the next subject basically" without having Officer Kozicki testify altogether. (PCRA Hearing N.T. 97). Trial Counsel disagreed with Defendant stating that "I thought then I certainly think now that it was more or less insignificant detail." (PCRA Hearing N.T. 98).

Defendant fails to explain how challenging the stipulated report would have caused the jury to weigh the evidence differently. More importantly, Defendant has failed to show any prejudice that he suffered as a result of the stipulation. Trial Counsel had a reasonable basis for the stipulation so as to limit the extent of Officer Kozicki's testimony. Foregoing the caution expressed by Trial Counsel, Defendant would have elected to place Officer Kozicki on the stand to attack credibility on the issue of a single digit in a report to which other evidence introduced at trial supported. The danger clearly accompanying such a strategy is having an officer of the law presenting his report and offering first-hand details of the discovery to the jury in the hopes of having him admit to amending his report. Defendant fails to develop how

15

such a strategy would provide a substantially greater opportunity for success. Therefore, we find that Defendant's claim lacks merit.

## *Failure to Object to Commonwealth's Witness, Josephine Wolfe, and Her Identification of Defendant*

Defendant argues that his Trial Counsel was ineffective for his failure to object to the testimony of the Commonwealth's witness, Josephine Wolfe, and her identification of Defendant. Defendant contends that Ms. Wolfe never identified Defendant prior to his jury trial or provided police with a statement. Defendant cites to the police report indicating that police were initially in contact with a friend of Ms. Wolfe, Paula Reber, who was anticipated to testify, but later refused. Ms. Reber, as indicated in the police reports, believed that she and Ms. Wolfe had an encounter with Defendant on the morning of the homicide.

When Ms. Wolfe's friend later refused to testify, Ms. Wolfe was called. During her testimony, the district attorney handed Ms. Wolfe a photographic lineup and asked her to identify the person with whom she and Ms. Reber had contact. Ms. Wolfe circled and initialed the face of that person. Upon the district attorney's moving the Court for admission of the marked photographic lineup, Defendant's Trial Counsel objected and after sidebar discussions, the Court sustained the objection and the lineup was not admitted or published to the jury for viewing. Ms. Wolfe did not provide an in-court identification of Defendant.

We note, initially, that at the PCRA Hearing, Defendant incorrectly recalled the events that occurred at his jury trial. Defendant claimed that the District Attorney had asked Ms. Wolfe "do you see that man in the courtroom today?" and that Ms. Wolfe responded that she could. (PCRA N.T. 72).

16

However, our review of the transcript reveals that Ms. Wolfe was never asked to identify Defendant in court, but instead, upon the Court's sustaining Trial Counsel's objection, the Commonwealth had no further questions for Ms. Wolfe.

Defendant acknowledges that the lineup was not shown to the jury, but contends that the fact that the jury saw Ms. Wolfe mark and initial the lineup caused prejudice. Furthermore, Defendant maintains that Trial Counsel should have objected to Ms. Wolfe's testimony in whole since she had not identified Defendant prior to trial and was not the individual with whom police were in communication. Defendant asserts that if Trial Counsel had objected prior to Ms. Wolfe's testimony, he would not have been prejudiced by her last minute identification of Defendant.

We find no merit in Defendant's argument. Defendant baldly claims that Trial Counsel was ineffective for failing to object to Ms. Wolfe's testimony merely because "[t]here was no reason for the Commonwealth to call Ms. Wolfe as a witness." (Def.'s Br. 11). While it is reasonable to expect that Trial Counsel should have anticipated Ms. Wolfe's testimony and planned accordingly, we fail to hold that such an expectation should include foreknowledge of the Commonwealth's strategy. Trial Counsel is expected to counter the Commonwealth's witness testimony and evidence in defense of his client, which is exactly what occurred. No mention in the transcript of Ms. Wolfe's testimony specifically identified Defendant and, more importantly, Trial Counsel successfully objected to the admission of Ms. Wolfe's marked lineup identification. Furthermore, Ms. Wolfe was identified in the police reports as Ms. Reber's friend who it was believed had an encounter with Defendant on the day of the homicide. We fail to see a reasonable basis upon which Trial

17

Counsel should have objected to Ms. Wolfe's testimony beyond his actions at trial.

*Failure to Object to Inadmissible Evidence*

Defendant next claims that Trial Counsel was ineffective for failing to object to inadmissible evidence. Specifically, Defendant argues that Trial Counsel should have objected to the introduction of Rick Cannon's bloody clothes, shoes and the gunshot report ("GSR") into evidence. Defendant opines that because Mr. Cannon's charges, including the conspiracy charge, had already been read to the jury by the Court, the introduction of the bloody clothes and the GSR indicating that Mr. Cannon had gunpowder residue on his hands served to prejudice him at trial.

Trial Counsel explained at the PCRA Hearing that the introduction of the evidence served to support the defense's theory of the case. To reiterate, the strategy at trial was to bolster the idea that Mr. Cannon had committed the actual murder and that Defendant was outside when it occurred. Trial Counsel stated that the introduction of the evidence at trial showed that "Rick Cannon was the murderer and blood on his clothing and gunshot residue proved that he was the one who was shooting gun." (PCRA Hearing N.T. 99).

We find that Defendant has failed to demonstrate that an alternative existed that would have substantially created a greater potential for success. As Trial Counsel testified, the introduction of Mr. Cannon's bloody clothes and the GSR supported Defendant's theory of the case. As such, we find that Defendant has failed to show that Trial Counsel was ineffective for failing to object to the admitted evidence.

18

## Failure to Object to Commonwealth's Audio Recording of Co-Defendant's Unredacted Statement

Defendant argues that Trial Counsel was ineffective for failing to object to the Commonwealth's introduction of the audio recording of Co-Defendant, Akeita Harden's unredacted statement to the jury. Initially, during the trial, Ms. Harden's redacted statement was read into the record by Detective Michael DiPalo of the Lebanon County District Attorney's Office on behalf of the Commonwealth. Ms. Harden's redacted statement included *Traverse*[15] language when her statement referred directly to Defendant, but other nicknames or aliases, which were at the time unknown to the jury, were not redacted from the statement. Later in the trial, Ms. Harden testified on her own behalf and during cross-examination, her statement was referenced. The Commonwealth then recalled Detective DiPalo back to the stand on rebuttal and certain portions of an audio recording of a second interview with Ms. Harden were played for the jury. Trial Counsel specifically objected so as to limit the introduction of the recording to those portions directed at rebuttal of Ms. Harden's testimony. However, during the rebuttal testimony, the Commonwealth specifically questioned Detective DiPalo about the nicknames Ms. Harden used for Defendant, which were the same as those originally introduced in Ms. Harden's first statement.

Defendant testified at the PCRA Hearing that Trial Counsel and the attorney for Ms. Harden informed Defendant that the statement would not be played for the jury. Defendant contends that Trial Counsel should have objected to the specific use of nicknames referring to him in Ms. Harden's

---

[15] *Com. v. Traverse*, 768 A.2d 845 (Pa. 2001), in which the Pennsylvania Supreme Court held that utilizing the phrase "the other man" (or similar language), along with a trial court's cautionary charge, when introducing a non-testifying co-defendant's statement, which implicates the defendant, does not violate a defendant's Confrontation Clause rights.

19

statement and that the statement should have been redacted as it pertains to him.

We fail to see merit in Defendant's argument. Certainly, if Ms. Harden did not testify, then only her unredacted statement, without any specific or inferential reference to Defendant would be allowed accompanied by cautionary instruction as to the statement. However, once Ms. Harden testified, and she became available for cross-examination, then the issue of admission of her previous statement no longer violates Defendant's confrontation clause rights. Furthermore, the Commonwealth is assuredly allowed to request admission of evidence, including Ms. Harden's previously recorded statement, in order to rebut Ms. Harden's testimony. Defendant fails to provide a rationale under which Trial Counsel could have further objected to the admission of Ms. Harden's statements other than what he presented at trial.

## Failure to Properly Cross Examine Witnesses

Defendant contends that Trial Counsel was ineffective for failing to properly cross-examine the living victim, Keith Crawford and the Commonwealth's D.N.A. Expert, Katherine Cross. Defendant contends that the testimony of the two witnesses did not correlate and, in fact, were contradictory. Defendant further alleges that Mr. Crawford was not truthful in his testimony regarding his involvement with illegal drugs and that Trial Counsel was ineffective in his cross-examination of Mr. Crawford about drug-related items seized from the crime scene.

At trial, Ms. Cross testified that she found blood on the inside of the barrel of the handgun believed to be the weapon used in crime. DNA testing and analysis determined that the sample from inside the barrel was consistent

with that of Marcus Ortiz, the homicide victim. Furthermore, the presence of the blood sample inside the barrel indicated that the barrel of the gun was close enough to the victim to experience blow back and that the blood sample found would have been from the last person shot with the gun.

When Mr. Crawford testified, he identified Defendant as the person who shot him. When questioned as to who was shot first, Mr. Crawford indicated that Mr. Ortiz was shot first and then he was shot afterward. Defendant argues that the testimony is inconsistent and that Trial Counsel should have cross-examined Mr. Crawford as to the inconsistencies.

Defendant likewise argues that Trial Counsel was ineffective for failing to further cross-examine Mr. Crawford regarding his illegal drug use and involvement with illegal drugs. During his cross-examination of Mr. Crawford, Trial Counsel specifically questioned Mr. Crawford as to the preparation of illegal drugs in the apartment prior to the day of the crime. Mr. Crawford denied this occurred.

Defendant testified at the PCRA Hearing that he discussed attacking Mr. Crawford's credibility on cross-examination, but that Trial Counsel refused and told Defendant "that he wouldn't because he didn't want to inflame the jury" and "make the jury look at [Mr. Crawford] any more sympathetically." (PCRA Hearing N.T. 39). Furthermore, Defendant stated that he wanted Trial Counsel to cross-examine Mr. Crawford more vigorously regarding the evidence of illegal drug preparation in the apartment in order to attack Mr. Crawford's credibility.

Trial Counsel testified that he had concerns during Mr. Crawford's cross-examination because he had severe disabilities as a result of the shooting and he did not want Mr. Crawford to appear more sympathetic to the jury. Trial

21

Counsel explained his strategy to tailor cross-examination specifically to the witness, eschewing harsh and aggressive cross-examination, so as not to induce more sympathy for the witness form the jury and prejudice Defendant in the process.

We find that Defendant has failed to indicate how an alternative strategy would have offered a better opportunity for success. Trial Counsel had a reasonable basis for the strategy employed in cross-examining Mr. Crawford so as to avoid inflaming the jury into further sympathetic feeling and avoiding a more negative impact upon Defendant. Moreover, the evidence of illegal drug preparation was provided by the Commonwealth and described by the Commonwealth's witnesses. The jury was able to observe the evidence, along with Mr. Crawford's testimony and Defendant has failed to demonstrate how he was prejudiced by Trial Counsel's strategy.

Defendant also claims that Trial Counsel was ineffective for not properly cross-examining Ms. Cross as to any and all possible alternatives as to how his DNA could have ended up on the handgun used as the murder weapon. Ms. Cross testified at trial that the she found touch DNA samples on the grip of the handgun that were consistent with Defendant, Ms. Harden and Mr. Crawford, along with other samples similar to Mr. Ortiz and Mr. Cannon and another unknown individual. Ms. Cross stated that the presence of unknown samples is not uncommon in items that are frequently touched. During cross-examination, Trial Counsel specifically referenced the DNA touch samples from the grip of the handgun and confirmed with Ms. Cross that at least five people had touched the gun from the samples that were collected.

Defendant contends that Trial Counsel should have more vigorously cross-examined Ms. Cross as to how exactly his DNA could have ended up on

22

the grip of the gun. Defendant testified at the PCRA Hearing that guns were passed around between different individuals so that he could have touched the gun weeks or even months prior to the homicide. However, Defendant claims that Trial Counsel did not elicit such a possibility from Ms. Cross or even attempt to proffer an alternative as to how both his own and Mr. Crawford's DNA were both on the grip.

Defendant fails to demonstrate how a more vigorous cross-examination of Ms. Cross in eliciting an alternative as to how touch DNA may be transferred onto the grip of the handgun would have offered a greater potential for success. Trial Counsel specifically questioned Ms. Cross as to the reliability of the database of DNA samples, the amount of people who were found to have touched the handgun grip and as to the order of shootings alleged to have occurred. Trial Counsel also allowed Defendant, during his testimony at trial, to provide an explanation as to why his DNA would be on the gun. Defendant presented no evidence that Ms. Cross would have provided further support for his assertion and merely assumes the outcome of such questioning. Defendant additionally fails to demonstrate how he was prejudiced by Trial Counsel's inaction in further questioning Ms. Cross. An unfavorable verdict is not *per se* evidence of prejudice.

### *Failure to Object to Commonwealth's Improper Comments During Closing Arguments*

Defendant next argues that Trial Counsel was ineffective for failing to object to alleged improper remarks made by the District Attorney during closing remarks. Specifically, Defendant alleges that during closing remarks, the District Attorney stated that "every word out of your mouth is a lie" and "he lied to you." (Def.'s Br. 18). Defendant complains that Trial Counsel failed

to object immediately after the remarks were made and therefore, he was prejudiced by the attack on his credibility and the perception of the jury that he was not truthful.

At the close of the trial, during discussions with the Court, Trial Counsel specifically objected to the comments made by the District Attorney and requested a curative instruction. The Court noted that we would give an instruction that "what the lawyers say or think they say is not evidence. They are opinions of whether people are telling the truth or not. It is not evidence." (Trial N.T. 1147). In fact, during instruction, the Court gave the following instruction to the jury: "What either Attorneys think, say they think or give opinion as to what is true or not true is not evidence." (Trial N.T. 1150).

Trial Counsel testified at the PCRA Hearing that his general practice is not to interrupt the prosecutor's closing remarks, even though he might find things objectionable, but to rely more on curative instruction from the Court. Trial Counsel set forth three basis for his rationale. First, there is concern for inflaming the jury when an objection is made during closing remarks. Second, Trial Counsel noted that he did not wish to "get a reputation of [objecting during closing remarks] because [he didn't] wan the DA doing it to me." (PCRA Hearing N.T. 106). Finally, Trial Counsel referenced an inherent level of professional courtesy that is observed in the profession for such decorum during opening and closing remarks.

Our Supreme Court has stated that:

Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict. Moreover, the prosecution, similar to the defense, is

24

accorded reasonable latitude and may employ oratorical flair arguing its version of the case to the jury. The arguments advanced must, however, be based upon matters in evidence and/or upon any legitimate inferences that can be drawn therefrom. Finally, any allegedly improper prosecutorial comments must also be examined within the context of the conduct of defense counsel.

*Com. v. Jones*, 683 A.2d 1181, 1199 (Pa. 1996)(internal citations omitted).

We find that Defendant's claim lacks merit. Initially, we note that Trial Counsel did indeed object to the District Attorney's statements in his closing remarks, though he failed to do so during the actual remarks. Trial Counsel expressed several reasons for waiting to object, including professional decorum and caution to avoid behavior that might irritate or inflame the jury. Professional decorum and respect for the procedures of the courtroom are certainly laudable characteristics of judicial civility, but not necessarily justification for a failure to adequately advocate on a client's behalf. However, avoiding behavior in the courtroom that might inflame or irritate the jury is more aligned to the client's interests as the behavior of the advocate, whether for good or ill, will certainly reflect upon the client.

But not for such reasons alone do we find the claim lacks merit. As noted, Trial Counsel did object to the statements and the Court presented what we felt was an appropriate curative instruction, though one already in the standard instructions, to address the objection. We likewise gave instruction as to credibility, stating that "the matter of credibility of a witness, that is, whether his or her testimony is believable and accurate in whole or in part is solely for your determination." (Trial N.T. 1153). A "trial court's curative instruction is presumed to be sufficient to cure any prejudice to [Defendant]." *Com. v. Dennis*, 715 A.2d 404, 410 (Pa. 1998)(*citing* Com. v. English, 699 A.2d 710 (Pa. 1997)).

25

Moreover, we believe that the timing of Trial Counsel's objection, standing alone, cannot provide a basis to otherwise find merit in Defendant's claim. Our Superior Court has stated that "contemporaneity of objection is not insisted upon as a value in itself, rather it is required as the most convenient method of preventing a party from permitting error to insinuate itself into the record and complaining thereafter." *Com. v. Griffin*, 236–37, 412 A.2d 897, 901 (Pa.Super. 1979). We find this language compelling as to Trial Counsel's objection. The mere fact that Trial Counsel waited until after closing remarks to object is not error unless his failure to timely object resulted in the "unavoidable effect" of forming prejudice the in the minds of the jury, so as to foster "bias and hostility towards [Defendant] which would prevent them from properly weighing the evidence and rendering a true verdict." *See Com. v. Jones, supra.* Therefore, we will still address the issue of the District Attorney's statements as though Trial Counsel failed to object at all and determine whether, despite Trial Counsel's allegedly mistimed objection, the claim has underlying merit.

We begin by examining the statements made by the District Attorney during closing remarks. First, the District Attorney, in discussing the conflicting statements in Defendant and Ms. Harden's testimony stated the following:

> And again, [Defendant] claims he didn't have anything in his hands. [Ms. Harden] told you he had something in his hands. You can see for yourself. He's got the paper bag in his hands as he gets out of the car at 7th and Guilford Street. The reality is he lied to you from the stand about that, among other things, in addition to the keys.

(Notes of Testimony of October 13, 2015 Closing Statements "Closings N.T." at 70). At trial, the Commonwealth presented video from a police cruiser in

26

pursuit of the Cadillac SUV during the chase. As part of the presentation, still photographs from the police video were included. (Trial N.T. 58). In questioning Officer Gross regarding the details of the pursuit and aftermath, the District Attorney presented a screenshot form the pursuit video in which an individual, alleged to be Defendant, exits the front, passenger side door of the Cadillac SUV and flees. (Trial N.T. 59). The District Attorney then points out that the individual fleeing from the front, passenger side door "appears to have something in his hand," to which Officer Gross responds "That's correct." (Trial N.T. 59). The screenshot photographs were entered into evidence and presented to the jury.

Again, our Supreme Court has held that "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." *Com. v. Jones*, 668 A.2d 491, 514 (Pa. 1995). The District Attorney presented evidence upon which he based his comments regarding the veracity of Defendant's statement. "It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses." *Com. v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005). However, we don't find that the District Attorney's comments express such a personal opinion or belief, but that he remarked on the inference to be drawn from the evidence presented.

Furthermore, prosecutorial remarks are to be analyzed in the broader context and we must remember that "the prosecutor is permitted to respond to defense arguments and is free to present his or her case with logical force and vigor." *Com. v. Koehler*, 737 A.2d 225, 240 (Pa. 1999). During closing remarks, Trial Counsel referenced the inconsistencies between Defendant's testimony and Ms. Harden's testimony and argued these inconsistencies indicate that both Defendant and Ms. Harden were telling the truth. (Closings N.T. 42-43).

27

The District Attorney's remarks regarding the inconsistencies between Defendant's and Ms. Harden's testimony, coupled with the photographic evidence presented to the jury, signals more of a response to Trial Counsel closing remarks than necessarily as commenting upon Defendant's credibility. We do not find that the District Attorney's remarks were improper in such context.

Next, we look at the other statement complained of by Defendant. Trial Counsel, in closing statements, referenced Defendant's testimony and his admission as to a criminal lifestyle and remarked that "you really need to look at his testimony with excruciating detail and really come to a conclusion as to whether believable or not, whether he is credible or not." (Closings N.T. 40-41). Trial Counsel continued, in arguing Defendant's credibility, that "[o]ne of the ways that you can really judge credibility is when someone admits things that are harmful to them." (Closings N.T. 41). Trial Counsel continued stating that Defendant "got up and admitted all kinds of things . . . . He used the word criminal to describe himself. I am a criminal he said, and I've been once since I was I thing 13 he said. That goes a long way toward credibility. (Closings N.T. 41-42). This statement is aligned with the defense strategy throughout the trial that Defendant admits criminal activity, but denies his personal involvement in the murder.

Later in the closing remarks, the District Attorney stated:

Eddie Williams, I don't even know where to begin with this guy. He's got 10 prior theft-related offenses, burglary, two robberies. He tells you about his prior gun charges, 14 or more alias names that he uses, nine dates of birth he referenced, multiple Social Security Numbers. This guy, I'm going to suggest to you, every word out of his mouth is a lie, pretty much every time he speaks. I don't know how else to classify it.

28

He's found by the Philadelphia Police department seven months after this happens. He instantly lies to them repeatedly about who he is so they can't figure it out . . .

Chief Leahy brings him back. He and Corporal Achey interview him, and he lies repeatedly, repeatedly. First denying he's even there, said he found out about it from somebody else. Just ridiculous answers that they knew were not true. Eventually they say, look, come on, we know you're not telling the truth, what happened. All right. And then he lies again. He lies again. He says, okay, well I wasn't -- "I was there, but I drove a rental car there myself, and [Co-Defendants] then came over later on."

All right. So he lies initially. Then he says, "All right, I'll tell you the truth." Then he lies again, and then gets on the stand -- and again, it's for you to figure out what he was trying to say. Then it sounds like he's denying he ever made any statements to police at all. Initially testified, "I said that, but I was lying" to eventually "I didn't say a word to those guys, they are making this whole thing up, they don't have me on paper, they don't have a recording, they've got nothing." And again, his own words on his phone call: "Even if I was there, I would have said I wasn't there." Okay. What does that tell you about him? That tells you he's going to lie to everyone about everything no matter what. Doesn't matter. I'm going to lie to you no matter what I have to say. That's the way he operates.

(Closings N.T. 81).

Again, we find that the District Attorney's remarks both refer to the testimony and evidence set forth at trial and respond directly to the defense strategy employed throughout the trial that Defendant was at the scene, but did not participate in the shootings. Trial Counsel set forth the argument that Defendant's admission to past criminal activity and even to his own characterization as a criminal, serve to ensure his credibility otherwise. Our Supreme Court recently reaffirmed the necessity for freedom of the prosecutor "to respond fairly to the arguments of the defense." *Com. v. Clancy*, ___ A.3d ___, 42 WAP 2017 at *17 (Pa. Aug. 21, 2018). In *Commonwealth v. Johnson*,

29

588 A.2d 1303 (Pa. 1991), the Pennsylvania Supreme Court held that in a case where the outcome involved a credibility determination by the jury, and the prosecutor had repeatedly stated that the defendant had lied, that "it would be difficult to conceive of any other approach when closing to the jury than that employed by the prosecutor here." *Id.* at 1307. The Court stated that the jury was acutely aware of conflicting testimony and that the prosecutor's comments merely reinforced the fact that the jury had been presented conflicting stories." *Id.* We find the same result in the matter *sub judice* and therefore, the District Attorney's comments during closing remarks were not improper.

*Inclusion of Alleged False Information in Trial Counsel's Anders Brief to the Superior Court*

Defendant claims that Trial Counsel provided false information in his *Anders* brief to the Superior Court and that such false information is a likely reason for the denial of Defendant's appeal. Defendant alleges that Trial Counsel included in his *Anders* brief that Defendant had admitted to begin in the house at the time of the shooting, but that someone else did the shooting. Defendant denies any such admission during his testimony.

In his *Anders* brief to the Superior Court, Trial Counsel included in a recall of the facts emerging at trial that Defendant "testified at trial that he was in the apartment at the time the shots were fired, but that another individual, Rick Cannon, had actually fired the shots." (Appellant's Br. in 2117 MDA 2015 at 8). Indeed, we could find no reference in the record of Defendant's testimony in which he made such an admission. During his trial, Defendant testified that he left the apartment in order to obtain a phone that was in the vehicle and that as he "was walking back towards the house, and I heard

30

gunshots." (Trial N.T. 951). Therefore, we find that Defendant's underlying claim has merit.

Trial Counsel's brief was filed nearly six months after the transcripts of the trial were filed to the record. Clearly, Trial Counsel had access to Defendant's testimony, including Defendant's denial that he was inside the apartment when shots were fired. As such, we find no reasonable basis for Trial Counsel's inclusion of the false claim that Defendant had admitted to being in the apartment when the shots were fired.

Lastly, we must determine whether Trial Counsel's error so prejudiced Defendant that the result of the proceeding would have been different, but for Trial Counsel's action. Our best indicator of whether such error caused prejudice is to examine the Superior Court's decision following the filing of Trial Counsel's brief. We note that while Trial Counsel's *Anders* brief was examined and referenced in the Superior Court's decision, it was not dispositive as to the Court's independent analysis. In fact, the Superior Court stated that "Our independent review of the record reveals no other issues of arguable merit." *Com. v. Williams*, 2117 MDA 2015, 2016 WL 5868525, at *5 (Pa.Super. Aug. 24, 2016). Despite Defendant's claim, the Superior Court had the opportunity to review the evidence and testimony at trial and make an independent determination of the facts therefrom. We are thus unconvinced that Defendant suffered such prejudice from Trial Counsel's inclusion of the erroneous statement such that the result of the decision on appeal would have been different.

### *Asking Defendant About Past Arrests on the Stand*

Finally, Defendant argues that Trial Counsel was ineffective in his representation because he referenced Defendant's past arrests for other

crimes. Defendant alleges that Trial Counsel opened the door for the district attorney to introduce further aspects of his criminal record.

At his trial, Defendant testified on his own behalf. Trial Counsel began his direct examination of Defendant by questioning him regarding past arrests. Defendant testified that he had previously been arrested four times and then proceeded to discuss two of his previous arrests. Upon cross-examination, the Commonwealth questioned Defendant regarding his other previous arrests and then regarding his known aliases.

At the PCRA Hearing, Trial Counsel explained that "[i]t was our plan from the beginning not to hide [Defendant's] background" and the strategy was to acknowledge Defendant's criminal background to the jury so as to "try to separate in their mind their personal feelings as opposed to what they feel legally." (PCRA Hearing N.T. 109). Defendant admitted to certain aspects of the trial in which an admission as to his criminal activities in the past were explanatory as to his behavior on the day of the homicide and the events thereafter. However, Defendant denied that his criminal history was necessarily admitted in order to further the trial strategy.

We find that Defendant has failed to prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Com. v. Howard*, 719 A.2d 233, 237 (Pa. 1998). Trial Counsel stated that the understood strategy was not to hide from Defendant's background, but to concede past crimes and an unsavory lifestyle, in the hopes that the jury would recognize the admission and understand that such an admission does not necessarily implicate Defendant in the crimes being tried.

32

## CONCLUSION

Defendant has failed to demonstrate that Trial Counsel's representation was so ineffective as to violate Defendant's constitutional rights. Having found such, we deny Defendant any relief on his claims. Accordingly, we will issue an order consistent with the foregoing.